## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**GLENN C.,**

      **Plaintiff,**

                               **Case No. 2:19-cv-16806**

     **v.**                          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

       This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Glenn C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying these applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

       Plaintiff filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on June 18, 2015, and June 23, 2015, respectively, alleging that he has been disabled

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

since November 1, 2014. R. 1089−90, 1099−1100, 1215−1224. The applications were denied initially and upon reconsideration. R. 1131−36, 1138−43. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 1144−46. Administrative Law Judge ("ALJ") Leonard Costa held a hearing on October 12, 2017, at which Plaintiff, who was represented by counsel, testified. R. 1054−1088.[2] In a decision dated February 23, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2014, the alleged disability onset date, through the date of that decision. R. 44−53. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 19, 2019. R. 1−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 26, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[3] On that same day, the case was reassigned to the undersigned. ECF No. 19. The matter is now ripe for disposition.

---

[2] The ALJ mistakenly states that a vocational expert, Michael Smith, testified at the hearing. R. 44. However, the record makes clear that the vocational expert was unable to appear at the hearing and answered interrogatories propounded after the hearing. *See* R. 46 ("Subsequent to the hearing, interrogatories were sent to a vocational expert, Michael Smith (Exhibit 19E). On November 2, 2017, Mr. Smith completed the interrogatories, which were marked as Exhibit 20E and made a part of the record."), 1057 (reflecting the ALJ's hearing statements that "I just want to bring to your attention, we have a little problem with our vocational expert testimony" and that the vocational "expert called in and advised us that he wasn't able to make it today"), 1316−22 (copy of Exhibit 19E, request for vocational interrogatories), 1323−28 (copy of Exhibit 20E, vocational expert's responses).

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.

Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018

WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 50 years old on his alleged disability onset date. R. 51. He met the insured status requirements of the Social Security Act through December 31, 2018. R. 47. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 1, 2014, his alleged disability onset date, and the date of the decision. R. 47.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical spine disorder; lumbar spine disorder; hip disorder; and knee disorder. *Id*. The ALJ also found that the Plaintiff's hypertension and history of pancreatitis were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various limitations. R. 47–51. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a shipping supervisor. R. 51.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 7,319 jobs as a survey worker; approximately 5,522 jobs as a page; approximately 5,390 jobs as a fundraiser—existed in the economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 52. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2014, his alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three and four and also claims a denial of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    David H. Corey, D.C.

David Corey, D.C., of Corey Chiropractic Center,[4] Plaintiff's treating chiropractor, first examined Plaintiff on May 4, 2015, following an April 2015 automobile accident. R. 1380. In an undated letter, the chiropractor chronicled his observations and findings from this initial visit as well as the progress (such as increased cervical and lumbar range of motion) mad by Plaintiff following conservative treatment, which included chiropractic manual manipulation, hydrotherapy, electric stimulation therapy, and mild exercise. R. 1380−86 ("Chiropractor Corey's undated letter").[5] The chiropractor's diagnoses and prognosis are as follows:

**DIAGNOSIS:**
> The patient has been diagnosed with acute cervical and lumbar strain sprain with postconcussion syndrome as well as permanent injuries to multiple levels of spinal discs as shown by both MRI and EMG testing. These injuries are of a permanent nature because the soft tissue injuries heal with scar tissue, which are neither as elastic nor resilient as their undamaged counter parts. The damage to the discs will not heal.
> We have concluded from all the examinations performed and other tests enclosed that the patient suffers from a severe acute traumatic cervical, thoracic and lumbar sprain with resultant radiculopathy.
> These injuries are accompanied by ligament instability, myositis and localized evidence of nerve root irritation. Ligament and muscle tissue appeared myositis and displayed chronic spasm.

**PROGNOSIS:**
> The prognosis is guarded due to the positive findings on tests and examinations. The injuries will remain with the patient through his life and can be expected to degenerate over time. The patient can be expected to have future difficulties with the regions involved. The damage of the discs will probably degenerate over time, making further care a likely outcome.
> In these type of injuries, the soft tissue components, such as muscles, tendons and ligaments heal with scar tissue, which will never be as flexible or elastic as their original counterparts.

---

[4] Chiropractor Corey practices with Michael A. Corey, D.C., at Corey Chiropractic Center. *See*, *e.g.*, R. 1380.
[5] Chiropractor Corey's undated letter appears as a duplicate later in the record. *Compare* R. 1380−86 (from Exhibit 4F) *with* R. 1574−80 (from Exhibit 15F).

The permanent restriction of the range of motion of the neck and low back region will result in significant limitation of use of the patient's cervical and lumbosacral spine, which will no longer be able to function in a normal manner as it did prior to the accident.

**OTHER PROFESSIONAL CONSULTANTS:**
I. Magnetic Resonance images (973)-589-7777)
2. EMG's Dr. Karlin M.D. (908)-810-1151)

**PERMANENCY:**

Neck and back pain, stiffness and weather sensitivity. The disc bulges and herniations are permanent findings. Chronic myospasms based upon length of care given are also considered permanent.

**DISABILITY & OPINION:**

As a direct result of the traumatic injuries sustained by the patient, there were extremes of joint movement with concomitant stretching and tearing of the ligamentous structure of the cervical, thoracic and lumbar regions. It appears that these areas will be permanently weakened for an indefinite period of time resulting in significant and permanent restricted mobility.

From all the findings known and from re-evaluation performed after several office visits, it is our conclusion that the patient has suffered a permanent partial disability as a result of the accident in question. We feel that while continued therapy and treatment is essential, prognosis for a complete recovery is good, guarded, poor, not possible [sic].

**CASUALTY** [sic]**:**

In our opinion, stated with a reasonable degree of medical certainty, and also based on all the records reviewed, this patient's signs and symptoms are casually [sic] related to the accident in question.

**FUTURE CARE:**

In summary, as a result of the accident, the patient has sustained the injuries noted with the significant limitations enclosed. In all medical certainty, the patient will suffer acute serious flare-ups on these conditions in the future that may necessitate further care.

Throughout the time period that the patient treated many symptoms did subside while other injuries are obviously permanent and chronic in nature. Ongoing care is very likely. Each patient responds in a different manner to the care of health providers, some quickly and others more slowly.

R. 1385–86.

**B.     Luba Karlin, M.D.**

Luba Karlin, M.D., a Board-certified specialist in physical medicine and rehabilitation,

examined Plaintiff on July 22, 2015, for injuries sustained in the April 2015 motor vehicle accident. R. 1392–99. Plaintiff complained of constant posterior neck pain and stiffness, right and left shoulder and scapular pain, constant low back pain and stiffness, right buttock and hip pain, intermittent bilateral hand numbness and paresthesias, intermittent right buttock and thigh paresthesia and cramps, bilateral knee pain and stiffness aggravated by walking and negotiating stairs and bilateral knee pain worse on the left with intermittent knee swelling. R. 1392. Plaintiff had a history of right shoulder surgery twelve years previously. R. 1393.

Upon examination of the cervical spine, Dr. Karlin noted bilateral cervical paraspinal tenderness to palpation; limited range of motion of the cervical spine; multiple tender trigger points including the bilateral trapezius, levator scapulae and rhomboid muscles; and positive Spurling's bilaterally with radiation to the neck, shoulder, scapula and arm. R. 1394. Examination of the thoracic spine revealed no tenderness, no spasm of either the right or left paraspinal structures, and no swelling or discoloration. *Id*. Upon examination of the lumbar spine, Dr. Karlin noted limited range of motion with tenderness to palpation of the lumbar paraspinal muscles bilaterally; positive straight leg raising; positive Patrick's maneuver; positive compression over the sacroiliac joint; tenderness over the right sciatic notch; and negative Piriformis test. *Id*.

Examination of Plaintiff's shoulders revealed no swelling or discoloration. R. 1395. Active movements were painful on extreme ranges but unrestricted with full range of motion. *Id*. Testing revealed positive Neer impingement and cross-over impingement on Plaintiff's right shoulder but negative on the left shoulder and negative in both shoulders on the Apley Scratch test, Supraspinatus test, and Speeds test. *Id*. Testing of Plaintiff's wrists revealed a positive Phalem's test in both wrists; a positive Tinel's test on the right wrist but negative on the left

wrist. *Id.*

Upon examination of Plaintiff's hips, Dr. Karlin noted moderate tenderness over the posterior of both hips with active and passive movements restricted and painful but no swelling or discoloration. R. 1396. Plaintiff had severe tenderness in the right S1 joint and right sciatic notch of the right hip. *Id.* Trendelenburg's test was positive on the right and the Ober's test was negative on both hips. *Id.* Examination of Plaintiff's knees revealed bilateral tenderness over the medial joint lines and posterior/medial aspect of the knee and mid-infrapatellar regions with bilateral joint edema, pain and crepitus. *Id.* Patella Apprehension test and Patella Tap test were positive for both knees but McMurray's test and Lachman's tests were negative for both knees. *Id.* Dr. Karlin noted an antalgic gait but a negative Romberg test. *Id.*

In assessing Plaintiff's muscle strength in his upper extremities, Dr. Karlin noted 4/5 flexion / extension in the right shoulder and 5/5 in the left shoulder; 4/5 abduction / adduction in the right shoulder and 5/5 in the left shoulder; 5/5 flexion/extension of both elbows; 4/5 flexion/extension in the right wrist and fingers and 5/5 in the left wrist and fingers; 5/5 grip strength in both hands; 4/5 abduction/adduction in the right fingers and 5/5 in the left fingers; and thumb opposition strength 4/5 in the right hand and 5/5 in the left. R. 1397. There was decreased sensation to pinprick in the right thumb, index finger, and middle finger in the left hand in the C6-7 distribution. *Id.*

Examination of muscle strength in the lower extremities revealed 4/5 flexion/extension and abduction/adduction in both hips; 4/5 flexion in both knees; 5/5 extension in the right knee and 4/5 in the left; 5/5 dorsiflexion and Plantar extension in both feet; 4/5 flexion/extension in the right toes and 5/5 in the left toes; and 4/5 right big toe extension and 5/5 left big toe extension. *Id.* Lower extremity reflex testing showed 1+ bilateral bicep jerks; 2+ bilateral tricep

12

jerks; 1+ brachioradialis jerks on right side and 2+ on left side; knee jerks were 1+ on right side and 2+ on left side; bilateral hamstring jerks were 0+; ankle jerks were 1+ on the right side and 2+ on the left side. *Id*.

Dr. Karlin diagnosed sprain and strain of the neck and of the thoracic and lumbar back; traumatic cervical radiculitis; intervertebral disc disorder with myelopathy in the cervical and lumbar regions; and displacement of cervical and lumbar disc without myelopathy. R. 1398. Dr. Karlin recommended physical therapy and exercises. R. 1399. Dr. Karlin characterized Plaintiff's prognosis as guarded. *Id*.

On August 5, 2015, Plaintiff followed up with Dr. Karlin for evaluation and for a NCV/EMG (electromyogram or electrodiagnostic) study. R. 1400−08. Plaintiff reported unchanged pain. R. 1400−01. When reviewing the results of the NCV/EMG on Plaintiff's upper and lower extremities, Dr. Karlin's impressions were as follows:

> 1. EMG revealed acute denervation process in right L5-Sl, S1-S2 innervated muscles and L4-L5, L5-SI paraspinals on the right, compatible with L5-SI radiculopathy on the right. Recommended to add McKenzie program, lumbar stabilization and strengthening exercises to the patient's treatment regimen.
>
> 2. There is no electrical evidence of cervical radiculopathy. In this case it may indicate that if compressive radiculopathy is present, no significant root/nerve damage has occurred or if it has, it is minor.
>
> 3. There is evidence of bilateral carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory and motor components on the left and sensory components on the right. Recommended the use of cock-up splint at night to relieve symptoms.

R. 1402.[6]

---

[6] This record is a duplicate that appears multiple times in the record. *See* R. 1402, 1428, 1506, 1583.

###### C.    Justin Fernando, M.D.

On December 22, 2015, Justin Fernando, M.D., conducted a consultative examination of Plaintiff. R. 1409−12. Plaintiff presented with chief complaints of chronic back pain for more than ten years due to slipped disks in his back, history of pancreatic inflammation, and hypertension. R. 1409. Plaintiff reported that he had undergone an epidural injection in his back with no improvement. According to Plaintiff, he quit working in 2013 due to increasing pain and an inability to lift the amount of weight that his job required. *Id.* Plaintiff stated that his pain became significantly worse after an April 2015 motor vehicle accident. *Id.* The pain radiates into both lower extremities. *Id.* Plaintiff also complained of pain in his neck. *Id.* Plaintiff's medical history included a minor procedure on his right shoulder in 2005, draining of the knees in 2013, an episode of acute pancreatitis secondary to drinking in 2015, and high blood pressure. *Id.* Most recently, a MRI revealed arthritic changes in the spine in addition to disk problems. R. 1409−10. Plaintiff's current medications included Lisinopril, Flomax, naproxen and simvastatin. *Id.* R. 1410.

Plaintiff reported that he lived with a friend, who drove him to the examination. *Id.* He was capable of doing most activities of daily living, although he occasionally needs some help. He does not use any handheld devices. *Id.*

Upon examination, Dr. Fernando noted that Plaintiff appeared to be in no acute distress; he had a normal gait and station and was able to walk normally and walk on his heels and toes without any difficulty. *Id.* Squatting was limited to 50% of normal due to back pain. *Id.* There was a mild degree of clubbing of the fingernails, which Dr. Fernando attributed to Plaintiff's smoking history. Tendons and muscles in the upper extremities were normal, as were range of motion, grip, pinch, and muscle strength. *Id.*  Range of motion and muscle strength of the lower

14

extremities was also normal. *Id*. There was full range of motion of the cervical and lumbar spine with no indication of tenderness over the midline or the paraspinal areas. *Id*. Straight leg raising was 45 degrees bilaterally from the supine position and 90 degrees from the seated position. *Id*. There was evidence of enlargement of the liver as well as exophthalmos and a likelihood of thyrotoxicosis. *Id*.

Dr. Fernando diagnosed the following:

1. Chronic lower back pain with bilateral subjective symptoms of radiculopathy (but not associated with any clinical signs indicating persistence of disk herniation or persistence of impingement on the lower lumbar roots).

2. Painful cervical spine with symptoms occasionally of tingling and numbness in the fingers (considered to be due to carpal tunnel syndrome. The claimant, however, does not show any evidence of carpal tunnel syndrome. Tinel sign is negative bilaterally and there is no indication of any muscle atrophy among the muscle groups innervated by the median nerve).

3. History of acute pancreatitis (induced by alcohol excess).

4. Clinical evidence of hepatomegaly.

5. Clinically evident exophthalmos (and the likelihood of thyrotoxicosis).

*Id*. Dr. Fernando went on to state as follows:

The claimant's symptoms of pain in his neck and pain in his lower back associated with numbness in the fingers had been told to him that it could be the result of carpal tunnel syndrome after a limited EMG and nerve conduction studies had been done, he was told of carpal tunnel syndrome. Clinically, however, there is no indication that either of the median nerve has been subject to any form of entrapment at the carpal tunnels sufficiently to cause any significant tension within the carpal tunnel sufficient to cause atrophy among the muscles innervated by the median nerves. The same is also true of the lower back where he claims to have pain and radicular symptoms, but reflexes being as good as they are, the likelihood that it is associated with herniation or impingement on the lower lumbar roots or the lower cervical roots appears remote.

R. 1411–12.

### D.     Walter Pedowitz, M.D.

Plaintiff presented to Walter Pedowitz, M.D., an orthopedic surgeon, on August 24, 2017, with complaints of pain in both knees. R. 1439. The pain had begun gradually about three years prior, with no known injury. *Id.* Plaintiff rated the pain as 8/10 and constant, waking from his sleep, and accompanied by swelling, numbness, and weakness. *Id.* Symptoms are worsened by kneeling, sitting, bending, climbing stairs, walking, and standing. *Id.* Plaintiff also reported difficulty walking, especially up and down stairs, and with standing for more than 40 minutes. R. 1441.

Upon examination, Dr. Pedowitz noted no swelling, ecchymosis, or deformity of the right hip, but tenderness over the groin and limited internal rotation. R. 1440. There was decreased hip strength because of pain and an antalgic gait favoring the affected side with positive Stinchfield and Trendelenburg tests; however, Plaintiff's sensations were intact and his reflexes were normal and symmetrical. *Id.* The left knee revealed no swelling, ecchymosis, or deformity. *Id.* Plaintiff demonstrated full range of motion in all areas tested, 5/5 strength in all muscle groups tested, intact sensations, normal and symmetrical reflexes, and normal gait pattern with no limp. *Id.* Special testing (McMurray, Apley, Anterior drawer, Lachman, Pivot shift, Valgus stress, Varus stress, Posterior sag, Patellar compression, and Patellar Apprehension tests) was all negative. *Id.* X-rays of both knees revealed early arthritis. R. 1440–41.

Dr. Pedowitz diagnosed unilateral post-traumatic osteoarthritis of the right hip and bilateral primary osteoarthritis of the knees. R. 1441. He  started Plaintiff on exercises and Vimovo and scheduled a follow-up appointment in three weeks. *Id.*

16

## V.      DISCUSSION

### A.      Due Process

Plaintiff first argues that his due process rights were violated when the Commissioner

failed to provide a "complete exhibit file" to his new counsel at the Appeals Council level and

when the ALJ improperly excluded records submitted after the administrative hearing. *Plaintiff's*

*Brief*, ECF No. 13, pp. 4−5, 16−18; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1, 9−10. The Court

addresses Plaintiff's arguments in turn.

#### 1.      Failure to provide complete exhibit file to new counsel

Attorney Eric Shore represented Plaintiff during the administrative hearing through the

date of the ALJ's decision issued on February 23, 2018. R. 39−40, 1054−88.[7] On March 27,

2018, Attorney Shore filed a request with the Appeals Council to review the ALJ's unfavorable

decision and sought an extension of time to file an appeal brief on Plaintiff's behalf. R. 1214.

However, Attorney Shore withdrew from the case on April 17, 2018, before filing that brief. R.

38. Plaintiff's current counsel, Attorney Sheryl Gandel Mazur, began representing Plaintiff on

May 4, 2018. R. 36−37.

Plaintiff alleges that, despite multiple requests by his new counsel, the Appeals Council

did not provide a "Complete Exhibit File" to Attorney Mazur and has denied her access to the

Electronic Records Express ("ERE"). *Plaintiff's Brief*, ECF No. 13, pp. 16−17 (detailing number

and dates of requests for complete file); *see also Andre v. Comm'r of Soc. Sec.*, No. 1:19-CV-41,

2020 WL 1931377, at *4 (W.D. Mich. Mar. 27, 2020) ("The Electronic Records Express is an

initiative by the Social Security Administration that affords claimants an opportunity to submit

---

[7] Another attorney from Attorney Shore's law offices, Allan Meltzer, appeared on Plaintiff's
behalf at the administrative hearing on October 12, 2017. R. 1057.

records electronically.") (citation omitted), *report and recommendation adopted*, No. 1:19-CV-41, 2020 WL 1922643 (W.D. Mich. Apr. 21, 2020). Although his precise argument is difficult to follow, Plaintiff appears to contend that the Appeals Council failed to provide Attorney Mazur with copies of approximately 1000 pages of records from Saint Barnabas Medical Center, R. 61–1053 (containing records for the period September 2014 to July 2016). *Plaintiff's Brief*, ECF No. 13, pp. 5, 17; *Plaintiff's Reply Brief*, ECF No. 17, p. 1.

According to Plaintiff, "there was a due process denial in that the records were intentionally or unintentionally withheld from Plaintiff's current attorney, who was only provided with evidence of the existence of these records in the front appendix of this Court Transcript TR61-1053." *Plaintiff's Reply Brief*, ECF No. 17, p. 1. Nevertheless, "[d]ue to the [new] attorney's complete mistrust that the Appeals Council would provide a complete exhibit record or provide [Plaintiff] Due Process appeal rights, the Plaintiff proceeded with a brief [filed with the Appeals Council on February 19, 2019] based upon the incomplete record available (Tr. 1335-1338)." *Plaintiff's Brief*, ECF No. 13, p. 4; *see also* R. 1342–46 (reflecting letter dated April 15, 2019, from Attorney Mazur addressed to the Appeals Council, complaining, *inter alia*, that Plaintiff has been denied due process and "herein incorporates all arguments made in the February 19, 2019 brief (attached) plus requests reversal and remand for consideration of all medical records in the Case Documents that need to be moved to the Exhibit list, and development of any other missing records for the period prior to the ALJ decision"),[8] 1348–52 (reflecting letter dated May 22, 2019, from Attorney Mazur addressed to the Appeals Council, complaining, *inter alia*, of denial to the exhibit file and to ERE access, and raising substantive

---

[8] Plaintiff's argument challenging the ALJ's exclusion of certain evidence is addressed later in this Opinion and Order.

arguments regarding the denial of Plaintiff's claims). Plaintiff goes on to argue that "the current attorney at the Appeals Council Level was denied any right to review or raise issues since the Plaintiff's had no knowledge of their existence[.]" *Plaintiff's Reply Brief*, ECF No. 17, p. 1; *see also id at* 10−11 (arguing that the Appeals Council's failure to provide these records to Attorney Mazur as well as its failure to explain "why all the records were not reviewed and were rejected or omitted . . . caused an additional due process violation by failing to place the new attorney on notice that the hearing level submissions were excluded, and the attorney was unaware of their existence"). Plaintiff therefore contends that "[t]he Commissioner's failure to provide a complete record to the attorney at the Appeals Council level constitutes a denial of Due Process and requires automatic reversal and remand." *Plaintiff's Brief*, ECF No. 13, p. 17; *see also id.* at 4 (citing Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") I-20-1-20);[9] *Plaintiff's Reply Brief*, ECF No. 17, pp. 9−11 (arguing that Plaintiff's due process rights were violated and citing to HALLEX).

Plaintiff's arguments are not well taken. "'[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair.'. . . This standard is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or

[9] HALLEX I-20-1-20, entitled "Preparation of Exhibit List," addresses the preparation of a proposed exhibit list before the administrative hearing (Subsection A) and the update of the exhibit list after the administrative hearing (subsection B). HALLEX I-20-1-20, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-20.html (last visited August 27, 2021). HALLEX I-20-1-20(A) specifically provides that a claimant and claimant's representative "have the right to examine the material that constitutes or will constitute the evidence of record." *Id.* HALLEX I-20-1-20(B) further provides that "[a]n exhibit list in final form is required when an ALJ issues a less than fully favorable decision to protect the claimant's due process rights. The claimant is entitled to know the information the ALJ relied on when making the decision. When an ALJ issues a less than fully favorable decision, preparing the exhibit list in final form is mandatory and is not a discretionary practice." *Id.*

her claim or where the ALJ exhibits bias or animus against the claimant." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857−58 (3d Cir. 2007) (quoting *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995)) (internal quotation marks omitted). However, to the extent that Plaintiff relies on HALLEX as a source of his due process rights, "as an internal manual, HALLEX does not have the force of law[.]" *Moraes v. Comm'r Soc. Sec.*, 645 F. App'x 182, 186 (3d Cir. 2016) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (stating that the HALLEX "has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees"); *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (concluding that HALLEX does not impose "judicially enforceable duties")). "Thus, Plaintiff cannot establish that he suffered a deprivation of due process simply by pointing to alleged violations of the HALLEX." *Grimm v. Colvin*, No. 1:14-CV-1614, 2015 WL 5123700, at *4–5 (W.D. Pa. Sept. 1, 2015) (citing *Bordes*, 235 F. App'x at 859). Accordingly, a failure to comply with HALLEX will not serve as an independent basis for remand. *See id.*; *see also Chaluisan v. Comm'r Soc. Sec.*, 481 F. App'x 788, 791 (3d Cir. 2012) ("Internal social security manuals lack the force of law and do not bind the Social Security Administration.") (citations omitted); *Bordes*, 235 F. App'x at 859 (stating that HALLEX "lack[s] the force of law and create[s] no judicially-enforceable rights") (citations omitted); *Ungemach v. Comm'r of Soc. Sec.*, No. 1:18-CV-04987, 2019 WL 3024858, at *4 (D.N.J. July 11, 2019) (stating that the Court "quickly rejects" Plaintiff's request for appeal based on a failure to follow HALLEX because it is "not [an] independent ground[] for reversal").[10]

---

[10] Moreover, although Plaintiff focuses on his change of counsel, he does not explain why his former lawyer's apparent failure to provide a complete case file to Attorney Mazur−or to update her on the status of the case, including the evidentiary record−would properly serve as a basis for remand. *Cf. Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) ("[T]here is

However, even assuming that the Appeals Council erred in failing to provide to
Plaintiff's new counsel the approximately 1000 pages from Saint Barnabas Medical Center,
Plaintiff has not shown that such records require remand. Although Plaintiff complains that his
new attorney was "denied [at the Appeals Council level] any right to review or raise issues"
based on this evidence, *Plaintiff's Reply Brief*, ECF No. 17, p. 1, Plaintiff has not explained what
arguments Attorney Mazur would have raised to the Appeals Council had these records from
Saint Barnabas Medical Center been provided. *See generally id.*; *Plaintiff's Brief*, ECF No. 13.
At most, Plaintiff simply provides a brief summary of these records, and characterizes them as
"new and material evidence," but offers no explanation as to why this evidence would warrant
remand. *Plaintiff's Brief*, ECF No. 13, pp. 12–13; *see also id.* at 18. The Court will not construct
Plaintiff's arguments for him. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL
1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the
evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has
done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the
Court to put them together. The Court does not assemble arguments for a party from
fragments."). Moreover, the Appeals Council explicitly considered Attorney Mazur's arguments
that "new and material evidence" was missing and that Plaintiff's due process rights were being
violated, but nevertheless concluded that there were no reasons to grant Plaintiff's request for
review. R. 1–2. Based on this record, particularly where the Appeals Council has considered all
of Plaintiff's arguments, *id.*, and where Plaintiff has not identified what additional arguments
Attorney Mazur would have raised before the Appeals Council arising from the approximately

---

absolutely no statutory or decisional authority . . . that the alleged incompetence of [claimant's]
first attorney constitutes 'good cause'" for a sentence six remand.").

1000 pages from Saint Barnabas Medical Center, the failure to provide Attorney Mazur with a complete exhibit file is, at most, harmless error that does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").[11]

### 2. ALJ's exclusion of evidence

Plaintiff next contends that "the record contained almost one thousand pages of records for the period in issue which apparently were submitted to the ALJ prior to the ALJ decision on February 20, 2018 (Tr. 61-1053)." *Plaintiff's Brief*, ECF No. 13, p. 17. Plaintiff argues that the ALJ improperly excluded this evidence. *Id*. at 17–18; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1, 10–11.

Under the applicable regulations, a claimant must submit any information or evidence to the ALJ no fewer than five business days before the scheduled administrative hearing ("the five-day rule"):

> When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this

---

[11] The Court notes that Plaintiff complains that the Appeals Council erroneously said that evidence from Corey Chiropractic Center, Exhibit 15F, R. 1569–88, was "found" after the ALJ's hearing decision when it was really listed in the exhibit list attached to the ALJ's decision, R. 59. *Plaintiff's Brief*, ECF No. 13, pp. 5, 17. To the extent that Plaintiff complains that the ALJ's alleged failure to consider Exhibit 15F requires remand, the Court addresses that argument when considering Plaintiff's substantive arguments at step four.

> requirement, the administrative law judge may decline to consider or obtain the
> evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a). *See also* 20 C.F.R. § 416.1435(a). If a claimant misses this submission

deadline, the ALJ will accept the information or evidence under certain limited circumstances:

> If you have evidence required under § 404.1512 but you have missed the deadline
> described in paragraph (a) of this section, the administrative law judge will accept
> the evidence if he or she has not yet issued a decision and you did not inform us
> about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that
> prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your
> control prevented you from informing us about or submitting the evidence earlier.
> . . .

20 C.F.R. § 404.935(b*). See also* 20 C.F.R. § 416.1435(b).

Here, the Social Security Administration ("SSA") sent Plaintiff a letter dated August 3,

2017, advising that an administrative hearing was scheduled for October 12, 2017. R. 1164–92.

The SSA letter also advised, "If you are aware of or have more evidence, such as recent records,

reports, or evaluations, you must inform me about it or give it to me no later than 5 business days

before the date of your hearing." R. 1166. The letter expressly warned that "[i]f you do not

comply with this requirement, I may decline to consider the evidence unless the late submission

falls within a limited exception." *Id.* (explaining the limited exceptions).

On August 24, 2017, Plaintiff's former counsel, Attorney Shore, sent a letter addressed to

the ALJ "enclosing a list of medical providers. By informing Your Honor of the evidence known

to us that relates to whether our client is disabled, this meets our responsibilities under 20 C.F.R.

§§ 404.1512(c) and 416.912(c)."[12] R. 1299–1302 (identifying, *inter alia*, St. Barnabas Medical Center). On October 2, 2017, Attorney Shore sent another letter to the ALJ advising that he had requested "important" medical records from Adekunle Adeoti, M.D., on August 21, 2017, but that those records had not yet been received. R. 1308 ("Attorney Shore's five-day rule letter"). Attorney Shore therefore requested that the ALJ "hold the record open for these records, which should be received soon." *Id.*; *see also* R. 1309–15 (reflecting medical request logs).

On October 12, 2017, Attorney Meltzer, who appeared from Attorney Shore's office on Plaintiff's behalf, discussed Attorney Shore's five-day letter with the ALJ and whether there was any additional evidence to be included in the record. R. 1057–59. After Attorney Meltzer and the ALJ confirmed that records from Dr. Adeoti were included in the record at Exhibit 14F, R. 1537–68, Attorney Meltzer stated, "I don't believe we need any post for further development." R. 1059.

The ALJ also noted that, because the vocational expert was unavailable to testify at the hearing, the ALJ  would send interrogatories to the expert and Plaintiff's counsel would have an opportunity to request a supplemental hearing. R. 1057–58. On November 9, 2017, interrogatories were sent to the vocational expert, R. 1316–22, to which the expert responded on November 29, 2017, R. 1323–28. The ALJ advised Attorney Shore on December 5, 2017, that he had secured this evidence from the vocational expert and proposed to enter it into the record. R. 1329. The ALJ further advised as follows:

**Actions You Have A Right To Take**

You may submit any or all of the following: written comments concerning the evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider

---

[12] These sections address the responsibility of the claimant and SSA for evidence.

(including a report from the treating physician). You may also submit written questions to be sent to the author(s) of the new evidence.

You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law. If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire folly into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. You must submit a subpoena request, in writing, no later than 10 days before the date of any supplemental hearing. Any request that I issue a subpoena must provide the names of the witnesses or documents to be provided; the address or location of the witnesses or documents with sufficient detail to find them; a statement of the important facts that the witness or document is expected to prove; and the reason why these facts cannot be proven without issuing a subpoena. I will issue a subpoena if reasonably necessary for the full presentation of the case.

**Actions I Will Take If I Do Not Hear From You**

If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the new evidence. I will then enter the new evidence in the record and issue my decision.

R. 1329–30.

On December 8, 2017, Attorney Shore responded to the ALJ's letter, advising that "[a]t this time, we respectfully request that Your Honor close the record and render a decision." R. 1332. Thereafter, on February 23, 2018, the ALJ issued his decision, denying Plaintiff's claims. R. 44–53. In the administrative decision, the ALJ excluded "additional written evidence," reasoning as follows:

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. I

25

> decline to admit this evidence because the requirements of 20 CFR 404.935(b) and
> 416.1435(b) are not met. During the hearing, the claimant's representative
> specifically stated that there was no other medical evidence that needed to be
> submitted and no extension was needed to obtain and/or submit additional medical
> evidence.

R. 44. The ALJ went on to note that, after the vocational expert had responded to the

interrogatories and those responses had been provided to Attorney Shore, "the claimant's

representative responded to the proffered records indicating that the record was closed and

requested that a decision be rendered" on December 8, 2017. R. 46.

      Plaintiff disagrees with the ALJ's decision to exclude evidence under the five-day rule.

Although the ALJ did not identify the particular "additional written evidence" that was excluded

and there is no letter or exhibit in the record reflecting what it was that Attorney Shore actually

submitted to the ALJ and which was subsequently excluded, Plaintiff asserts that this evidence

consisted of the approximately 1000 pages from Saint Barnabas Medical Center, R. 61–1053.

*Plaintiff's Brief*, ECF No. 13, pp. 17–18; *Plaintiff's Reply Brief*, ECF No. 17, p. 10. Plaintiff

argues that the ALJ improperly excluded this evidence under the five-day rule because "the 1000

pages of unexhibited medical records were clearly referred to and listed in the prior attorney's

Five-Day Letter filed in record as Exhibit HO14E, on August 24, 2017 and HO18E, on October

2, 2017 well before 5 days of the October 12, 2017 hearing (TR 1299-1302, 1308-1315)" and the

ALJ was therefore required to consider this evidence. *Plaintiff's Reply Brief*, ECF No. 17, p. 1.

Plaintiff also argues that, after the administrative hearing, the "ALJ then proffered VE

interrogatories which were mailed to the Plaintiff and the record was therefore not closed under

the 5-day rule because the Plaintiff was allowed the right to cross-examine the VE and request a

continued hearing[.]" *Plaintiff's Brief*, ECF No. 13, p. 18. Plaintiff therefore contends that he met

the requirements under the five-day rule and the ALJ abused his discretion in excluding this evidence. *Plaintiff's Brief*, ECF No. 13, p. 18 (citing, *inter alia*, HALLEX I-2-6-58).[13]

Plaintiff's arguments are not well taken. As previously discussed, to the extent that Plaintiff relies on it, HALLEX does not impose judicially enforceable duties and will not serve as an independent basis for remand. *Schweiker*, 450 U.S. at 789; *Moraes*, 645 F. App'x at 186; *Chaluisan*, 481 F. App'x at 791; *Bordes* v, 235 F. App'x at 859. Moreover, the record reflects that Attorney Shore unequivocally asked the ALJ to close the record and render a decision on December 8, 2017, R. 1332, thus superseding any earlier request to hold the record open and confirming his colleague's representation at the administrative hearing that no further development of the record was needed. R. 1059. Accordingly, this record supports the ALJ's decision to exclude any additional evidence proffered by Attorney Shore.

However, as previously discussed, even if the ALJ erred in excluding this evidence, Plaintiff has not explained why the approximately 1000 pages from Saint Barnabas Medical Center requires remand. Based on this record, the Court concludes that any error in excluding this evidence is, at most, harmless. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553.

**B.      Step Three**

Plaintiff also argues that the ALJ erred at step three of the sequential evaluation when he concluded that Plaintiff's impairments neither meet nor equal a listed impairment, including Listing 1.02. *Plaintiff's Brief,* ECF No. 13, pp. 18−19. Plaintiff specifically contends that the ALJ erred in failing to discuss Listing 1.02. *Id.* Plaintiff also argues that "[d]ue to the extensive

---

[13] HALLEX I-2-6-58 is entitled "Admitting Evidence Submitted At Least Five Business Days Before the Hearing." HALLEX I-20-1-20, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-58.html (last visited August 30, 2021).

amount of new and material records provided at hearing level, a medical consultant or expert appointed by the Commissioner at the hearing level should have reviewed the entire record to assist in evaluating listing level equivalency." *Id*. at 19. Plaintiff's arguments are not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

Here, at step two, the ALJ determined that Plaintiff suffered the severe impairments of

cervical spine disorder; lumbar spine disorder; hip disorder and knee disorder. R. 47. The ALJ

determined at step three that Plaintiff's impairments, whether considered singly or in

combination, "do not meet or equal the regulatory requirements of any listing. I have specifically

considered the appropriate parts of Listing 1.00 [which addresses disorders of the

musculoskeletal system that may result from hereditary, congenital, or acquired pathologic

processes. Impairments may result from infectious, inflammatory, or degenerative processes,

traumatic or developmental events, or neoplastic, vascular, or toxic/metabolic diseases]." *Id*.; *see*

*also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00 (eff. Dec. 15, 2017 to Apr. 1, 2018). In

challenging this determination, Plaintiff first complains that the ALJ failed to discuss or evaluate

Listing 1.02, which, at the time of the ALJ's decision, addressed major dysfunction of a joint(s)

(due to any cause), 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02 (eff. Dec. 15, 2017 to April 1,

2018).[14] *Plaintiff's Brief*, ECF No. 13, p. 18. However, this conclusory assertion appears only in

the heading of his argument and Plaintiff, who bears the burden at step three, does not offer any

---

[14] Listing 1.02 specifically provides as follows:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross
> anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs of limitation of motion
> or other abnormal motion of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or
> ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder,
> elbow, or wrist-hand), resulting in inability to perform fine and gross movements
> effectively, as defined in 1.00B2c.

*Id*.

substantive analysis—such as how Plaintiff may have satisfied all the criteria to meet or medically

equal Listing 1.02—to support this conclusory assertion. *See id.* The Court therefore finds no

merit in Plaintiff's undeveloped argument in this regard. *Cf. Atkins v. Comm'r Soc. Sec.*, No. 19-

2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction from [the

claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern

[the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019)

("We need not address this conclusory, undeveloped accusation.") (citations omitted). In any

event, an ALJ's failure to expressly refer to the criteria of a specific listing is not fatal to his

decision "as long as the ALJ's review of the record permits meaningful review of the step-three

conclusions." *See Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008) (citations

omitted); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262–63 (3d Cir. 2006) (rejecting

the argument that the ALJ was required to identify which listings he used in his decision, stating

that "the ALJ is not required to use any specific format or language in his analysis, as long as he

sufficiently develops the record to permit meaningful judicial review[,]" and finding that "the

ALJ did state what listings he used for comparison" by citing to Listing 1.00, which "is not

merely an introductory treatise"); *Jones*, 364 F.3d at 503–05 (finding that, even though the ALJ

did not expressly refer to any specific Listing, the ALJ's analysis satisfied step three because the

decision indicated that the ALJ considered the appropriate factors). Here, "the ALJ's decision,

read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the

conclusion that [the Claimant] did not meet the requirements for any listing, including" Listing

1.02.  *See Jones*, 364 F.3d at 505; *see also Lopez*, 270 F. App'x at 122 (finding that the "ALJ's

failure to discuss specific Listings is not reversible error . . . because the ALJ analyzed all the

probative evidence and explained his Decision sufficiently to permit meaningful review");

*Rivera*, 164 F. App'x at 262–63. In considering whether Plaintiff meets or medically equals any listing, the ALJ expressly stated that he considered the appropriate parts of Listing 1.00, and, when determining Plaintiff's RFC, the ALJ engaged in a comprehensive review of the medical evidence relevant to Listing 1.02, detailing years of medical records and hearing testimony as outlined later in this decision. R. 47–51.

Plaintiff also contends that the ALJ should have appointed a "medical consultant or expert" because of "the extensive amount of new and material records provided at hearing level[.]" *Plaintiff's Brief*, ECF No. 13, p. 19. As a preliminary matter, Plaintiff implicitly concedes from the permissive language he cites from SSR 17-2p that the ALJ had the discretion to seek assistance from a medical expert but was not required to do so. *See id.* (quoting SSR 17-2p as providing that "'adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)'") (emphasis added).  In any event, however, Plaintiff again fails to identify with any citation to the record what these "new and material records" are and how consideration of specific records by a medical consultant or expert would have led to a different result, *i.e.*, that Plaintiff met or medically equaled a specific Listing. *See id.* Accordingly, the Court cannot conclude that the ALJ erred at step three or that the record requires remand on this basis. *See Shinseki,* 556 U.S. at 409–10 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"); *see also Atkins*, 2020 WL 1970531, at *4; *Wright*, 783 F. App'x at 245.

### C.    RFC and Evaluation of Medical Evidence

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Brief*, ECF

No. 13, pp. 20–28; *Plaintiff's Reply Brief*, ECF No. 17, pp. 2–10. Plaintiff appears to base this

argument on the ALJ's failure to expressly refer to certain exhibits: the ALJ "completely ignored

and failed to discuss 3F, 7F, 12F-15F, which is 7 out of 15 medical exhibits." *Plaintiff's Brief*,

ECF No. 13, p. 20. Plaintiff also points to evidence from other medical sources and argues that

the ALJ "erred in not according weight to the findings and opinions" of Luba Karlin, M.D.,

Plaintiff's treating physician; Michael Corey, D.C., Plaintiff's treating chiropractor; and Walter

Pedowitz, M.D., Plaintiff's treating orthopedic surgeon. *Plaintiff's Brief*, ECF No. 13, pp. 27–28.

Plaintiff's arguments are not well taken.

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law

judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c),

416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir.

2011) ("The ALJ—not treating or examining physicians or State agency consultants—must

make the ultimate disability and RFC determinations.") (citations omitted). When determining a

claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d

422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations.

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d

607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a

limitation is supported by medical evidence, but is opposed by other evidence in the record" but

"[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an

unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs; stoop; crouch; or balance; could never kneel or crawl; could never climb ladders, ropes scaffolds; could occasionally push/pull controls with the upper and/or lower extremities; and could perform no overhead reaching.

R. 47. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's ability to perform substantial gainful activity on a sustained basis despite his cervical spine disorder, lumbar spine disorder, knee disorder, hip disorder, hypertension and history of pancreatitis; the June 2015 MRI of the cervical spine ordered by Chiropractor Corey, which revealed a C3-4 disc bulge with compression of the anterior thecal sac and partial effacement of the anterior subarachnoid space, a C5-6 disc bulge with compression of the anterior thecal sac and partial effacement of the anterior subarachnoid space, a C6-7 disc bulge with compression of the anterior thecal sac and partial effacement of the anterior subarachnoid space, a C7-T1 disc bulge with compression of the anterior thecal sac and partial effacement of the anterior subarachnoid space but mild loss of C4-5 disc space height with a diffuse posterior central disc herniation with compression of the anterior thecal sac, effacement of the anterior subarachnoid space and compression of the anterior cervical spinal cord; a MRI of the lumbar spine, which revealed a L3-4 disc bulge with impingement on the neural foramina, a L4-5 disc herniation with compression of the anterior thecal sac, partial effacement of the anterior subarachnoid space and moderate facet and ligamentum flavum hypertrophic changes with moderate spinal canal stenosis; and a L5-Sl disc bulge with impingement on the neural foramina;

the August 2015 testing ordered by Luba Karlin, M.D., Plaintiff's Board-certified specialist in

pain management and rehabilitation, which revealed acute denervation process in the right L5-Sl,

S1-S2 innervated muscles and L4-L5, L5-SI paraspinals on the right, compatible with LS-SI

radiculopathy on the right, for which Dr. Karlin recommended lumbar stabilization and

strengthening exercises; the August 2015 NCV/EMG testing, which revealed no electrical

evidence of cervical radiculopathy and no significant (or only minor) root/nerve damage, and

evidence of bilateral carpal tunnel syndrome affecting sensory and motor components on the left

and sensory components on the right, for which Dr. Karlin recommended only the use of a splint

at night to relieve symptoms; the December 2015 consultative examination by Justin Fernando,

M.D., which revealed that, *inter alia*, Plaintiff had a normal gait and station, was able to walk

normally and walk on his heels and toes without any difficulty, normal joint movements in the

small joints of the fingers, normal tendon reflexes in the upper extremities, normal joint

movements at the shoulders, elbows, forearms, wrists, and fingers with full range of motion, 5/5

bilateral strength in the upper extremities with 5/5 bilateral grip and pinch strength, full range of

motion at the shoulders, elbows, forearms, wrists, and fingers and even in the right shoulder, full

range of motion of the lower extremities and of the cervical and lumbar spine with no indication

of tenderness over the midline or the paraspinal areas, straight leg raising to 45 degrees

bilaterally from the supine position and to 90 degrees from the seated position; x-rays of the

lumbar spine that showed mild degenerative changes at the L3-4 and L4-5 levels, and x-rays of

the left knee that showed mild degenerative changes in the left knee with minimal

chondromalacia of the patella; no indication that either of the median nerves had been subject to

any form of entrapment at the carpal tunnels sufficiently to cause any significant tension within

the carpal tunnel sufficient to cause atrophy among the muscles innervated by the median nerves;

and the opinion that Plaintiff's complaints of pain and radicular symptoms in the lower back were caused by herniation or impingement was remote in light of Plaintiff's good reflexes; the fact that Chiropractor Corey administered only conservative treatment; the fact that Walter Pedowitz, M.D., noted no swelling, ecchymosis, or deformity in the hip area, some tenderness over the groin but no palpable masses, hip strength was decreased because of pain but sensations were intact, and reflexes were normal and symmetrical; no swelling, ecchymosis or deformity of the knee, and there was full range of motion in all areas tested with strength testing at 5/5 in all muscle groups, and sensation was intact, and reflexes were normal and symmetrical; Plaintiff's testimony that he had undergone no recent medical treatment except for over-the-counter pain medication and that he experienced monthly flare-ups of his pancreatitis, and that he had been hospitalized twice. R. 48–51. The ALJ also assigned great weight to the state agency reviewing physicians who opined that Plaintiff was able to perform light exertional work with limitations regarding pushing / pulling with the upper and lower extremities with no overhead reaching. R. 51. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination on a number of bases. Plaintiff first complains that "the ALJ completely ignored and failed to discuss Exhibits 3F, 7F, 12F-15F, which is 7 out of 15 medical exhibits." *Plaintiff's Brief*, ECF No. 13, p. 20. Plaintiff argues that these records are "consistent and substantial[,]" highlighting the following evidence:

- Exhibit 3F: "[C]ontained ER records for November 2, 2014 for urinary retention and constipation (Tr. 1368-1372)." *Id.*

- Exhibit 7F: "[C]ontained records from Dr. Patel for gastritis and kidney stones with colectomy procedure (Tr. 1416-1417)." *Id.*

- Exhibit 12F: Containing a visit to the ER on February 15, 2016, "which included a CT scan of the abdomen which revealed recurrent acute edematous pancreatitis with inflammatory fluid around the pancreas extending into the retroperitoneum and to the transverse colon and pericolic regions with inflammatory changes of the transverse and descending colon (Tr. 1516-1517)"; avascular necrosis; an abdominal ultrasound that revealed a "mildly dilated pancreatic duct, hypoechoic pancreas, a small amount of perihepatic and pericholecystic fluid, gallbladder sludge and symmetric gallbladder wall thickening, possibly an inflammatory process"; a MRCP/MRI of the abdomen without contrast taken on February 18, 2016, which revealed "slightly hydropic gallbladder without obvious gallstones, edematous pancreas with peripancreatic stranding compatible with pancreatitis (Tr. 1525-1527)"; a July 22, 2016 chest X-ray that "was consistent with eventration of the right hemidiaphragm (Tr. 1528)." *Id*. at 20−21.

- Exhibit 13F: "[C]ontained updated records from Dr. Patel from April 16, 2016 to February 8, 2017, which included acute pancreatitis and knee pain (Tr. 1529-1536)." *Id.* at 21.

- Exhibit 14F: "[C]ontained records from Dr. Adeoti for March 21, 2016 to August 10, 2016 for moderate abdominal pain, benign prostatic hyperplasia and follow-up after hospitalization for acute pancreatitis (Tr. 1537-1568)." *Id*.

- Exhibit 15F: Contained Dr. Karlin's EMG/NCV studies and order for chiropractic treatment with Dr. Corey; reflects that "Dr. Corey performed conservative treatment and reported that the Plaintiff complained of sharp pain, stiffness and shooting pain interfering with sitting, standing and walking" and noted Plaintiff's subjective complaints; Dr. Corey found that Plaintiff had "limited range of motion in the cervical and lumbar spine, sensory loss in the left foot and bilateral upper extremities, and forearms as well as bilateral knee pain and swelling with very limited range of motion and trouble stair climbing[.]" *Id*. at 20−21 (citing R. 1569−72, 1583).

Plaintiff's arguments are not well taken. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009). However, an ALJ is not expected "to make reference to every relevant treatment note in a case." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Notably, the ALJ is entitled to overlook evidence that is "neither pertinent,

relevant nor probative." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (rejecting argument that ALJ's failure to discuss x-rays required remand because "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information") (emphasis in the original).

Here, Plaintiff complains that the ALJ failed to discuss evidence of urinary retention and constipation in Exhibit 3F without any explanation of why this omission undermines the ALJ's assessment of Plaintiff's RFC determination or results in any functional limitations. *See Plaintiff's Brief*, ECF No. 13, p. 20. As discussed above, the ALJ is not required to discuss "every tidbit of evidence[.]" *Hur*, 94 F. App'x at 133; *see also Fargnoli*, 247 F3d at 42; *Johnson*, 529 F.3d at 204. Plaintiff's undeveloped argument in this regard has not established any error or, at most, only harmless error that does not require remand. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2.

Plaintiff's complaints based on Exhibits 7F, 12F, 13F, and 14F containing evidence regarding his pancreatitis are similarly unavailing. Plaintiff simply lists evidence chronicling his history of pancreatitis without pointing to any functional limitations or explanation as to why this evidence requires remand. *See Plaintiff's Brief*, ECF No. 13, pp. 20–21. To the extent that Plaintiff attempts to supplement this argument by arguing that his pancreatitis prevented sustained work activities, Plaintiff again fails to identify any functional limitations supported by this evidence. *Id.* at 25–26 citing R. 1416–17 (Exhibit 7F), 1075–79 (Plaintiff's hearing testimony)); *Plaintiff's Reply Brief*, ECF No. 17, pp. 9–10 (speculating that Plaintiff's pancreatitis "was not only related to drinking and clearly not intentionally caused" as Plaintiff

37

worked in a porcelain warehouse and "it was probable he was exposed to dust and fumes on a daily basis for years"). Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). In any event, the ALJ specifically considered Plaintiff's history of pancreatitis and related hospitalizations, explaining at step two why that history did not amount to a severe impairment. R. 47. The ALJ considered this history again at step four when fashioning Plaintiff's RFC, R. 48–49 (noting Plaintiff's history of acute pancreatitis secondary to drinking), 50–51 (considering Plaintiff's testimony that, regarding his pancreatitis, "he had flare ups sporadically, maybe once a month and had only been hospitalized twice"); *see also* R. 1075–79 (reflecting Plaintiff's hearing testimony regarding his history of pancreatitis). Plaintiff's conclusory argument based on his history of pancreatitis therefore does not serve as a basis to remand this action. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2.

In addition, Plaintiff complains that the ALJ "ignored and failed to discuss" evidence found in Exhibit 15F, including Dr. Karlin's NCV/EMG studies. *Plaintiff's Brief*, ECF No. 13, pp. 20–21 (citing R. 1583). Plaintiff is mistaken. Exhibit 15F, R. 1583, containing Dr. Karlin's NCV/EMG studies from August 5, 2015, is a duplicate that appears three other times in the record. *Compare* R. 1402 in Exhibit 5F, *with* R. 1428 in Exhibit 8F, *with* R. 1506 in Exhibit 11F, *with* R. 1583 in Exhibit 15F. As noted above, the ALJ specifically considered this testing when fashioning Plaintiff's RFC. R. 48 (citing relevant pages in Exhibits 5F, 8F, and Exhibit 11F).

While Plaintiff goes on to point to four pages of notes from Exhibit 15F reflecting Chiropractor Corey's initial examination on May 4, 2015, which the ALJ did not specifically cite in his decision, Plaintiff again simply lists the medical information unaccompanied by any substantive discussion of why this evidence requires remand. *Plaintiff's Brief*, ECF No. 13, p. 20 (citing R. 1569−72). As previously explained, the Court will not construct Plaintiff's arguments for him or guess why this omission is not harmless. *See Shinseki*, 556 U.S. at 409−10; *Atkins*, 2020 WL 1970531, at *4; *Padgett*, 2018 WL 1399307, at *2. In any event, as this Court has already noted, the ALJ specifically considered the chiropractor's undated letter, which summarizes his findings from his initial examination on May 4, 2015. R. 50 (citing Exhibit 4F, R. 1380−86). Significantly, in his undated letter, Chiropractor Corey reported, *inter alia*, that Plaintiff's range of motion in his cervical and lumbar back had improved since his initial visit. *See* R. 1380−86. Plaintiff has not established that any failure to expressly discuss Chiropractor Corey's findings at his initial examination, as contained in Exhibit 15F, warrants remand.

In continuing to challenge the ALJ's RFC determination, Plaintiff also points to evidence from Dr. Fernando, Chiropractor Corey, Dr. Karlin, and Dr. Pedowitz that Plaintiff believes supports a finding of disability. *Plaintiff's Brief*, ECF No. 13, pp. 22−28; *Plaintiff's Reply Brief*, ECF No. 17, pp. 2−6. However, to the extent that Plaintiff relies on these physicians' diagnoses, the Court has already explained that a diagnosis, standing alone, does not demonstrate disability. *Foley*, 349 F. App'x at 808; *see also Phillips*, 91 F. App'x at 780. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)

("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak,* 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff goes on to complain that the ALJ "erred in not according weight to the findings and opinions of Drs. Karlin, Corey, and Pedowitz, which clearly support a finding of inability to perform light work (Supra.)." *Plaintiff's Brief*, ECF No. 13, p. 27. The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz*, 577 F.3d at 505–06; *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason

or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, as a preliminary matter, Plaintiff fails to identify what specific findings or opinions articulated by Drs. Karlin, Corey, and Pedowitz that the ALJ erred in failing to weigh. *See Plaintiff's Brief*, ECF No. 13, p. 27. As previously discussed, the Court will not assemble Plaintiff's arguments for him. *Padgett*, 2018 WL 1399307, at *2. In any event, the ALJ specifically considered evidence from these providers, R. 48–50, and Plaintiff's discussion of the evidence from Dr. Karlin and Dr. Pedowitz does not establish any opinion of functionality that the ALJ was required to weigh. *See generally Plaintiff's Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17; *see also Paczkoski v. Colvin*, No. 3:13-CV-01775, 2014 WL 4384684, at *9 (M.D. Pa. Sept. 4, 2014) ("Dr. Singh did not opine that Paczkoski had any specific functional limitations or that he was disabled. . . . Thus, there was no opinion of functionality by Dr. Singh that the ALJ could weigh.").

Similarly, the ALJ expressly considered Chiropractor Corey's undated letter, R. 48, 50, and Plaintiff points to no specific opinion of functionality that the ALJ erred in failing to consider. *See generally Plaintiff's Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17. As detailed above, the chiropractor's opinions as to Plaintiff's future condition and prognosis are speculative and non-specific. *See* R. 1385 (stating that Plaintiff's injuries "*can be expected* to degenerate *over time*" and he "*can be expected* to have *future* difficulties with the regions involved" and that "[t]he damage of the discs *will probably* degenerate *over time*") (emphasis added), 1386 ("The permanent restriction of the range of motion of the neck and low back region *will result* in significant limitation of use of the patient cervical and lumbosacral spine"; "*It appears* that these areas *will be* permanently weakened for an *indefinite period of time* resulting in significant and permanent restricted mobility."; "the patient *will suffer* acute serious flare-ups on these conditions *in the future* that *may* necessitate further care") (emphasis added). Plaintiff has not explained how a possible worsening of symptoms at some point in the unknown future can establish a finding of disability during the relevant period. *See generally Plaintiff's Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17. Notably, as previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted).

To the extent that anything in Chiropractor Corey's undated letter that Plaintiff never specifically identified could be construed as an opinion of functionality—such as that Plaintiff

"was advised to refrain from all heavy lifting[,]" R. 1384—Plaintiff has not explained how the ALJ's RFC determination for a limited range of light work does not accommodate such limitation. *See* R. 47; *Plaintiff's Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17. In the absence of Plaintiff pointing to an articulation of functional limitation that the ALJ failed to consider and weigh and explanation as to how such failure was not harmless, Plaintiff has not shown that any omission by the ALJ in this regard warrants remand. *See Shinseki*, 556 U.S. at 409–10.

Finally, Plaintiff complains that the ALJ erred in assigning "significant weight" to the state agency reviewing physicians because these opinions conflict with "the opinion of a treating physician" and because the state agency physicians did not "have access to the whole record[.]" *Plaintiff's Brief*, ECF No. 13, pp. 22, 25; *Plaintiff's Reply Brief*, ECF No. 17, pp. 7–9. Plaintiff's arguments are not well taken. State agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency

medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, here, the ALJ did not err when assigning significant weight to the reviewing state agency physicians' opinions issued in January and March 2016 simply because additional evidence was later submitted. R. 51, 1090−98, 1100−08, 1110−18, 1120−28. Moreover, the state agency physicians considered evidence from, *inter alia*, Dr. Karlin and Corey Chiropractic, and Plaintiff does not explain what specific evidence these physicians did not review that would have altered their opinions. R. 1091−93, 1101−03, 1112−13, 1122−23; *see generally Plaintiff's Brief*, ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17. As this Court has previously explained, the Court will not assemble Plaintiff's arguments for him nor will the Court speculate as to how any alleged error is harmful. *See Shinseki*, 556 U.S. at 409−10; *Padgett*, 2018 WL 1399307, at *2. Finally, "[s]imply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Fernando and Chiropractor Corey as well as the findings of Dr. Karlin and Dr. Pedowitz.

### D. Subjective Complaints

Plaintiff also challenges the ALJ's consideration of his subjective complaints, contending that medical evidence supports these complaints and that the ALJ erred in failing to discuss

evidence that supports these complaints. *Plaintiff's Brief*, ECF No. 13, p. 19. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

46

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[15]

Here, the ALJ followed this two-step evaluation process. The ALJ expressly considered

Plaintiff's subjective complaints. R. 48–51. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 51. As previously discussed, the ALJ detailed years of medical

evidence and record testimony to support his findings. R. 48–51. In the view of this Court, this

record provides substantial support for the ALJ's decision to discount Plaintiff's subjective

statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F.

App'x at 134; *Izzo*, 186 F. App'x at 286.

---

[15]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

In challenging this finding, Plaintiff devotes one conclusory paragraph in his opening brief that states in its entirety as follows:

> The ALJ failed to properly discuss or evaluate Mr. [C.]'s subjective complaints, in violation of 20 CFR §§404.1529, 404.1545 and SSR 96-8p, 96-9p and 16-3p. Mr. [C] contends that there is ample, unrebutted medical evidence in record to support his complaints, including pain and weakness in the shoulders, arms and hands; the ALJ's own findings of limited balancing; the Plaintiff's documented carpal tunnel syndrome, limiting consistent handling and fingering; a torn left shoulder and post-surgical changes in the right (dominant) shoulder limiting reaching; bilateral extremity motor weakness; complaints of inability to stand more than one hour per day with documented herniated lumbar discs with lumbar radiculopathy; reflex loss and other symptoms. The ALJ failed to discuss or evaluate symptoms secondary to recurrent pancreatitis, gallbladder and GI disorders.

*Plaintiff's Brief*, ECF No. 13, p. 19. Plaintiff's argument is unpersuasive. As a preliminary matter, Plaintiff provides no citation to the record for these factual assertions and the Court has no obligation to search through the record for support of Plaintiff's assertions. *See Atkins*, 2020 WL 1970531, at *4. Moreover, as previously explained, a mere diagnosis does not establish disability. *Foley*, 349 F. App'x at 808; *see also Phillips*, 91 F. App'x at 780. Notably, Plaintiff has not explained how this evidence results in greater or different restrictions than those found by the ALJ and which otherwise undermine the ALJ's evaluation of Plaintiff's subjective complaints. *See Shinseki*, 556 U.S. at 409–10.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec*., 105 F. App'x 319,

322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### E.    Hypothetical to the Vocational Expert

Finally, Plaintiff contends that the ALJ erred in failing to provide a complete hypothetical to the vocational expert. *Plaintiff's Brief*, ECF No. 13, p. 28.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert

all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the hypothetical posed by the ALJ to the vocational expert in the interrogatory assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 47, 1325–26. The vocational expert responded that the jobs of survey worker, page, and fundraiser II would be appropriate for such an individual. R. 1326. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554;

*Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all the impairments alleged by him were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: September 28, 2021                         _____*s/Norah McCann King*_____
                                                          NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE